IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIS CASTO,                                  :

      Plaintiff,                          :

v.                                             :  Civil Case No. GLR-13-1142

WELLS FARGO BANK, N.A.,                        :

      Defendant.                          :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff Willis Casto's ("Casto") Motion for Partial Summary Judgment (ECF No. 47) and Defendant's, Wells Fargo Bank, N.A. ("Wells Fargo"), Motion for Summary Judgment (ECF No. 50). The Motions are ripe for disposition. The Court, having reviewed the Motions and supporting documents, finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2014). For reasons stated below, Casto's Motion will be denied and Wells Fargo's Motion will be granted.

## I.  BACKGROUND[1]

Casto is a former customer of Wells Fargo. On October 31, 2003, Casto refinanced his First Mortgage with Wells Fargo and, in 2005, he also obtained a Home Equity Line of Credit ("HELOC") in the amount of $200,000. The HELOC agreement stated that the annual percentage rate (the "interest rate") shall change daily based upon the range of the unpaid balance of the account and would never be

---

[1] Unless otherwise noted, the following facts are taken from the parties' briefings on the instant motions, and are viewed in the light most favorable to the nonmoving party.

less than 4.24%.   The ranges of unpaid balances included: $0.00 to
19,000.00;   $20,000.00   to   $49,999.99;   and   $50,000.00   and   above.
Because   the   agreement   required   that   Casto   only   pay   the   interest
charged   per   month,   his   unpaid   balance   remained   in   the   $50,000.00
and above range throughout his relationship with Wells Fargo.

On April 27, 2009, Casto filed for Chapter 13 bankruptcy in
the   United   States   Bankruptcy   Court   for   the   District   of   Maryland
("Bankruptcy Court").   After filing for bankruptcy, Wells Fargo no
longer sent Casto monthly account statements for his First Mortgage
and   repeatedly   informed   Casto   that   his   HELOC   was   past   due.   Wells
Fargo   began   to   misapply   Casto's   HELOC   payments.     Specifically,
Casto   mailed   three   checks   for   payment   into   his   HELOC,   but   the
checks were mistakenly applied to his First Mortgage.[2]   Immediately
upon discovering the misapplied payments, Casto would contact Wells
Fargo   to   inform   it   of   the   errors,   refusing   to   repay   any   amount
supposedly   past   due.     On   May   27,   2010   and   December   14,   2010,
however, Wells Fargo corrected the errors and applied the checks to
the HELOC.

On May 18, 2010, Wells Fargo filed a Motion seeking Relief
from Stay in the Bankruptcy Court, stating Casto was in arrears for
$3,057.09.     On   June   4,   2010,   Casto   filed   an   opposition   to   the
Motion.   On July 23, 2010, Wells Fargo withdrew its Motion.

---

[2]   Also,   Wells   Fargo   misapplied   payments   towards   the
principal   balance   of   his   accounts   instead   of   the   accrued
interest.   Wells Fargo, however, corrected the errors.

On April 5, 2011, Casto filed a Motion to Approve Refinancing of Debtor's Real Estate in the Bankruptcy Court so that he could lower his monthly expenses and payoff the amount owed under the confirmed plan early. On April 11, 2011, Wells Fargo sent Casto a letter stating the payoff amount for the First Mortgage was $48,203.48. On April 13, 2011, Wells Fargo sent Casto another letter stating the payoff amount was $201,477.36.

On April 20, 2011, the Bankruptcy Court entered an order authorizing the loan modification. On May 12, 2011, Casto refinanced his home to a reverse mortgage where he consolidated the Wells Fargo First Mortgage and HELOC with 1st Maryland Mortgage Corp. On May 17, 2011, the new company disbursed to Wells Fargo $48,527.88 for the First Mortgage and $201,593.44 for the HELOC. Casto incurred settlement charges of $26,176.26. Casto claims that he never intended to refinance his home, but, due to Wells Fargo's deceptive and predatory practices, he had to refinance and suffer settlement costs. On May 18, 2011, Casto stated to 1st Maryland Mortgage Corp. that the payoff amounts were incorrect and he intended to file suit against Wells Fargo. On September 6, 2011, Casto was discharged by the Bankruptcy Court. On January 3, 2012, the Bankruptcy Court closed Casto's case.

On October 19, 2012, Casto filed a Complaint against Wells Fargo in the Circuit Court for Anne Arundel County, Maryland, alleging: intentional misrepresentation (Count I); negligent misrepresentation (Count II); deceit (Count III); concealment or

non-disclosure (Count IV); constructive fraud (Count V); breach of contract-First Mortgage (Count VI); and breach of contract-HELOC (Count VII).   (ECF No. 2).   In Counts I-V, Casto seeks to recover compensatory damages in the amount of $610,000, and $2,400,000 in punitive damages.   Casto also seeks to recover $48,527.88 in compensatory damages in Count VI and $201,593.44 in compensatory damages in Count VII.   On April 18, 2013, Wells Fargo removed the action to this Court based on diversity jurisdiction under 28 U.S.C. § 1332 (2012).   (ECF No. 1).   On December 11, 2013, Casto filed a First Amended Complaint.   (ECF No. 32).

On January 13, 2015, Casto filed a Motion for Partial Summary Judgment as to Count I.   (ECF No.47).   On February 13, 2015, Wells Fargo filed a cross-Motion for Summary Judgment and Opposition to Casto's Motion.   (ECF No. 50).   On April 8, 2015, Casto filed a Reply to Wells Fargo's Opposition and Opposition to Wells Fargo's Motion.   (ECF No. 53).   On May 11, 2015, Wells Fargo filed a Reply to Casto's Opposition.   (ECF No. 54).

## II.   DISCUSSION

### A. <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.   Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)).   Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).   "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."   Anderson, 477 U.S. at 247-48.

A "material fact" is one that might affect the outcome of a party's case.   Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).   Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citing Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984)).

**B. Analysis**

**1. Intentional Misrepresentation and Deceit**

The Court finds that Casto fails to demonstrate a claim for intentional misrepresentation and deceit.[3]  To prove a claim for intentional misrepresentation under Maryland law, the plaintiff must show that: (1) the defendant made a false representation to the plaintiff; (2) the defendant knew the statement was false or made the statement with reckless indifference for the truth; (3) the purpose of the misrepresentation was to defraud the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.[4]  SpinCycle, Inc. v. Kalendar, 186 F.Supp.2d 585, 590 (D.Md. 2002) (quoting Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc., 665 A.2d 1038, 1047-48 (Md. 1995)).

---

[3]  The elements of deceit are identical to those of intentional misrepresentation.  Ellerin v. Fairfax Sav., F.S.B., 652 A.2d 1117, 1123 (Md. 1995) (quoting Nails v. S & R, 639 A.2d 660, 668-69 (Md. 1994)).  The Court will, therefore, determine whether the parties are entitled to summary judgment as to intentional misrepresentation and deceit in tandem.

[4]  Misrepresentation damages may include emotional and psychological distress.  Bradley v. Bradley, 56 A.3d 541, 549 (Md.Ct.Spec.App. 2012).

Casto argues Wells Fargo made several misrepresentations: Wells Fargo misapplied two checks to his First Mortgage instead of his HELOC because Casto mailed the payments to the wrong address; Wells Fargo wrote the wrong account number on the checks Casto mailed for payments to his HELOC; Wells Fargo filed a Motion for Relief of Stay stating his HELOC was in arrears; Wells Fargo incorrectly calculated the amount of interest owed on his HELOC; Wells Fargo repeatedly stated Casto's accounts were past due; and Wells Fargo's internal notes on the HELOC are inconsistent with the account statements Casto received.

Wells Fargo argues Casto fails to demonstrate that he relied on the misrepresentations. Casto presents evidence that Wells Fargo corrected each misapplied payment. Casto concedes that he opposed Wells Fargo's Motion to Lift Stay and that Wells Fargo ultimately withdrew that Motion. Also, Casto did not rely on any statements that his HELOC account was past due. Instead, Casto requested his account history in order to dispute that his account was past due. Moreover, Casto does not demonstrate that he suffered a compensable injury due to Wells Fargo's statements that he mailed his checks to the wrong address because the payments were ultimately applied to his HELOC. Casto also fails to demonstrate that he relied on Wells Fargo's internal notes.

Lastly, Casto fundamentally misunderstands how the interest is calculated for the HELOC. Interest is calculated based upon the unpaid balance of the account. (ECF No. 54-1). The ranges of

unpaid balances included: $0.00 to 19,000.00; $20,000.00 to $49,999.99; and $50,000.00 and above. Beginning in 2011, if the unpaid balance was $19,000 or less, the interest rate would be 0%; and if the unpaid balance was between $20,000.00 and $49,999.99 or $50,000.00 and above, the interest rate would be 4.24%. Casto's unpaid balance remained above $50,000.00 throughout his relationship with Wells Fargo; therefore, the interest rate charged throughout 2011 was 4.24%.[5] As such, Wells Fargo's statements regarding the interest rate charged on the HELOC were not false representations. Accordingly, the Court will grant Wells Fargo's Motion for Summary Judgment as to Counts I and III and deny Casto's Motion for Partial Summary Judgment.

**2. Negligent Misrepresentation**

The Court finds that Casto has failed to demonstrate a claim for negligent misrepresentation. To prove a claim for negligent misrepresentation, a plaintiff must demonstrate that:

> "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence."

---

[5] Casto inexplicably believes that, in 2011, the first $19,000 of his balance was to be charged a 0% interest rate and the remainder of balance was to be charged a 4.24% interest rate.

White v. Kennedy Krieger Inst., Inc., 110 A.3d 724, 747 (Md.Ct.Spec.App. 2015) (quoting Lloyd v. Gen. Motors Corp., 916 A.2d 257 (Md. 2007)).

In Maryland, negligent misrepresentation claims require plaintiffs to prove that defendants owed a duty to them. Jacques v. First Nat'l Bank of Md., 515 A.2d 756, 758 (Md. 1986)).  It is well established in Maryland that the relationship between the bank and borrower is contractual, not fiduciary, in nature.  Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 778 (4th Cir. 2013) (quoting Kuechler v. Peoples Bank, 602 F.Supp.2d 625, 633 (D.Md. 2009)); Yousef v. Trustbank Sav., F.S.B., 568 A.2d 1134, 1138 (Md.Ct.Spec.App. 1990)).  Moreover, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort."  Jacques, 515 A.2d at 759.

In cases involving economic loss, the imposition of a tort liability requires "an intimate nexus between the parties" that is satisfied by "contractual privity or its equivalent."  Id. at 759-60.  Absent special circumstances, the court is reluctant to "transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement."  Parker v. Columbia Bank, 604 A.2d 521, 532 (Md. 1992) (citations omitted).

The Maryland Court of Special Appeals has recognized four "special circumstances" that can give rise to a tort duty between a

bank and its customer: where the lender (1) took on any extra services on behalf of [the borrowers] other than furnishing the money; (2) received any greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control; or (4) was asked by the borrowers if there were any lien actions pending. Id. at 533; see Polek v. J.P. Morgan Chase Bank, N.A., 36 A.3d 399, 418 (Md. 2012). Casto has failed to demonstrate any such circumstances existed to give rise to a tort duty.[6] The Court will, therefore, grant Wells Fargo's Motion as to Count II.

### 3. Constructive Fraud

The Court finds that Casto has failed to demonstrate a claim for constructive fraud. Constructive fraud "is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to

---

[6] In his Opposition, Casto argues special circumstances existed because Wells Fargo failed to provide account statements and payment information. Casto, however, appears to be arguing his concealment or non-disclosure claim (Count IV), stating Wells Fargo breached its duty to provide regular account statements and information. To prove a claim of concealment, a plaintiff must prove the following elements: (1) the defendant owed him a duty to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive him; (4) he took action in justifiable reliance on the concealment; and (5) he suffered damages as a result of the defendant's concealment. Lloyd v. Gen. Motors Corp., 916 A.2d 257, 274 (Md. 2007) (quoting Green v. H & R Block, 735 A.2d 1039, 1059 (1999)). Because the Court has found that Casto failed to demonstrate that Wells Fargo owed him a tort duty, the Court will also grant Wells Fargo's Motion for Summary Judgement as to Count IV.

injure public interests." SpinCycle, Inc. v. Kalender, 186

F.Supp.2d 585, 590 (D.Md. 2002) (quoting Scheve v. McPherson, 408

A.2d 1071, 1076 (Md.Ct.Spec.App. 1979); accord Canaj, Inc. v. Baker

& Div. Phase III, LLC, 893 A.2d 1067, 1095 (Md. 2006).   The

elements of constructive fraud and intentional misrepresentation

are similar, see ADCS Inc. v. Kimbrough, Jr., 30 F.App'x 225, 229

(4th Cir. 2002), except an intent to deceive is not an essential

element of constructive fraud, see Brass Metal Prods., Inc. v. E-J

Enters., Inc., 984 A.2d 361, 390 (Md.Ct.Spec.App. 2009).   Because

the Court finds that Casto failed to demonstrate any reliance on

any misrepresentation purportedly made by Wells Fargo, the Court

will grant Wells Fargo's Motion as to Count V.[7]

## 4. Breach of Contract

The Court finds that Casto has failed to demonstrate claims

for breach of contract regarding both the First Mortgage and the

HELOC.   In order for a cause of action for breach of contract to

exist, a party must show a contractual obligation and  breach of

that obligation.   Taylor v. NationsBank, N.A., 776 A.2d 645, 651

(Md. 2001).   In the First Amended Complaint, Casto alleges Wells

Fargo breached the contracts for both the First Mortgage and HELOC

by demanding unauthorized fees and interest payments and

---

[7] A portion of Casto's constructive fraud claim is based on
Wells Fargo's failure to provide regular account statements and
payment information when requested.   (Am. Compl. ¶¶ 253–62).
Such allegations, however, amount to a concealment claim, which
the Court has dismissed. See supra note 6.

misapplying payments.  Casto seeks damages for the amount disbursed to Wells Fargo when he refinanced his home.

As Wells Fargo notes, the misapplied payments were corrected, the late fees were charged due to Casto's late payments, and transaction fees were charged because Casto made several payments over the phone and through electronic transfers.  Casto does not demonstrate that the fees were not authorized by his First Mortgage and HELOC agreements with Wells Fargo.  Instead, Casto argues in his Opposition that Wells Fargo charged the transaction and late fees without proper notice to the Bankruptcy Court, purportedly in violation of the Federal Rules of Bankruptcy Procedure.  Such actions, however, do not give rise to a breach of contract claim and Casto failed to allege a claim regarding any violation of the Bankruptcy Rules in the First Amended Complaint.

Further, Casto asserts that Wells Fargo provided inaccurate payoff amounts when he refinanced his home.  Casto alleges he became aware of the inaccuracies after 1st Maryland Mortgage Corp. disbursed funds to Wells Fargo.  Specifically, he states the First Mortgage payoff amount is inaccurate because it includes transaction and late fees; however, Castro fails to show that the fees were not permitted by the First Mortgage agreement.

Additionally, Casto states the HELOC payoff amount is inaccurate because the interest rate was calculated improperly.  As previously stated, Casto misunderstands how the interest rate was calculated on the HELOC.  The interest rate is calculated based

upon the <u>unpaid balance</u> of the account.   Because Casto's unpaid balance remained above $50,000.00 throughout his relationship with Wells Fargo and the interest rate in 2011 for that unpaid balance was 4.24%, his HELOC was charged an interest rate of 4.24% at the time Wells Fargo generated the payoff letter.   The Court, therefore, finds that Casto has failed to demonstrate that the payoff amounts were inaccurate.   Accordingly, the Court will grant Wells Fargo's Motion as to Counts VI and VII.[8]

### III.   CONCLUSION

For the foregoing reasons, Wells Fargo's Motion for Summary Judgment (ECF No. 50) is GRANTED and Casto's Motion for Partial Summary Judgment (ECF No. 47) is DENIED.   The First Amended Complaint is dismissed.   A separate Order follows.

Entered this 23rd day of September, 2015

/s/

_____

George L. Russell, III
United States District Judge

_____

[8]   Because the Court has found that Casto fails to demonstrate any of the claims alleged in the First Amended Complaint, the Court will not address Wells Fargo's judicial estoppel, res judicata, and voluntary payment arguments.